IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Benjamin Charles Boone, | ) | |
| | ) | |
| Petitioner/Defendant, | ) | Civil Action No. 12-00547-WS |
| | ) | |
| v. | ) | Criminal No. 05-00265-WS-N |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

This action is now before the undersigned United States Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 8(b) of the Rules Governing Section 2255 Proceedings, on the following: the motion to vacate, set aside, or correct sentence, filed August 15, 2012 by Petitioner Benjamin Charles Boone, a federal prison inmate proceeding *pro se* (Doc. 39)[1]; Boone's response (Doc. 42) to the undersigned's show cause order (Doc. 41),[2] filed December 11, 2012; the United States' motion to dismiss (Doc. 45), filed June 10, 2013; Boone's "memorandum brief in support of amendment" to the § 2255 motion (Doc. 46), filed June 19, 2013; Boone's motion to compel the United States to file a Rule 35(b) motion to reduce his sentence (Doc. 47), filed June 19, 2013; and Boone's

---

[1] "Under the mailbox rule for prisoners, a prisoner's motion is deemed filed on the date it is delivered to prison officials for mailing. Absent contrary evidence, [a court in this Circuit] will assume that a prisoner's filing 'was delivered to prison authorities the day he signed it.'" *Fuller v. Terry*, 381 Fed. App'x 907, 908 (11th Cir. June 3, 2010) (per curiam) (citing *Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999) and quoting *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001)).

[2] The order, entered November 27, 2012, recognized that the petition appeared untimely and directed Boone to show cause why it was not barred by limitations.

reply to the United States' motion to dismiss (Doc. 48), filed June 28, 2013. As explained below, it is **RECOMMENDED** that Boone's § 2255 petition be **DISMISSED** as time-barred; that the Court find that he is not entitled to a certificate of appealability, and is therefore not entitled to appeal *in forma pauperis*; and that the Court **DENY** his motion to compel the United States to file a substantial assistance motion pursuant to Rule 35(b).

## I. Applicable Background

On November 14, 2005, Boone pleaded guilty to one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). (*See* Docs. 16, 17, 31.) On March 16, 2006, he was sentenced to a term of imprisonment of 210 months as to each offense, to be served concurrently. (*See* Doc. 32.) On February 26, 2007, after remand from the Eleventh Circuit (*see* Doc. 33; *United States v. Boone*, 215 Fed. App'x 818 (11th Cir. Jan. 24, 2007) (per curiam)), Boone was resentenced to a term of imprisonment of 120 months on the possession count, to be served concurrently with the 210-month sentence previously imposed for the distribution count (*see* Doc. 34). He did not appeal from this resentencing.

## II. Collateral Attack

### A. The statute of limitations.

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added a new subdivision to 28 U.S.C. § 2255 providing for a one-year period of limitations within which federal prisoners must file their motions to vacate pursuant to 28 U.S.C. § 2255. *See Akins*

*v. United States*, 204 F.3d 1086, 1089 (11th Cir. 2000).

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Boone argues that "newly discovered evidence," a June 26, 2012 "Diagnostic and Care Level Formulation Sheet," he claims he received on June 28, 2012, "along with the details of [his] 'new' medical problems since his direct appeal help to establish that he was mentally and physically unable to understand the stringent rules of § 2255." (Doc. 48 at 2; *see also* Doc. 42 at 10-11 (purported to be a copy of the Bureau of Prison (the "BOP")'s June 2012 evaluation of Boone).[3]) Boone asserts that the June 2012 BOP document "shows that [he] is diagnosed with Borderline Personality Disorder; frantic efforts to avoid abandonment; a pattern of unstable

---

[3] Boone has filed both the June 2012 BOP report and a November 2005 psychological evaluation by Dr. Thomas Bennett twice. (*Compare* Doc. 42 at 6-9, *with* Doc. 48 at 6-9 (BOP); *compare* Doc. 42 at 10-11, *with* Doc. 48 at 10-11 (Dr. Bennett).) Because the two filings are exactly the same, for consistency, the report and recommendation will refer to the versions of these reports included in Doc. 42.

3

relationships; suicidal behavior; instability; emptiness; [and] intense anger" (Doc. 39 at 4; *see also id.* at 12, 14[4]) Thus, Boone appears to argue that the ADEPA's one-year statute of limitations should run from late June 2012, when "the facts supporting the claim or claims presented[—Boone's mental impairments—]could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). (*See, e.g.,* Doc. 39 at 5 (Boone's second habeas ground is that his counsel was ineffective for not moving to suppress a confession, Boone contends was coerced, before advising Boone to plead guilty. Boone alleges he was coerced—"[h]is will was overborne in such a way as to render his confession the product of coercion"— because he "suffers from Personality Disorder and is Bi-Polar.").[5]) Unfortunately for Boone, however, the 2012 evaluation does not present "newly discovered evidence" as to his mental infirmities.[6] For example, in a sealed sentencing memorandum Boone's trial counsel filed March 9, 2006 (Doc. 22), the Court was

---

[4] In an affidavit filed in support of his petition Boone testifies,

> On June 28, 2012, I received a copy of my Care-Level Sheet and saw that I was diagnosed for Borderline Personality Disorder and Bi-Polar. This helped me understand why my will was overborne after I requested an attorney but was coerced into an involuntary confession. I then assisted the U.S. Government in thwarting a kidnapping/rape/murder without getting an agreement in writing. I assumed that the Government would reward me for my assistance.

(*Id.* at 14.)

[5] Similarly, Boone's third habeas ground, that he "is entitled to a 5k1.1 or Rule 35 departure for substantial assistance" (*id.* at 7), is based on Boone's belief that, although he "cooperated fully with the Government[, he] was taken advantage of because of his mental incapacity; Borderline Personality Disorder and Bi-Polar Disorder" (*id.*).

[6] The 2012 evaluation also contradicts Boone's contention that he is Bi-Polar. (*See* Doc. 42 at 10 ("The diagnosis of BPD [or Borderline personality Disorder] appears to fit Mr. Boone's presentation versus Bipolar Disorder . . . .").)

4

made aware of Boone's mental fragility; that memorandum recounts in some detail Boone's lifetime struggle in this regard (*see id.* at 7-14; *see also* Docs. 25-1, 25-2 (February and March 2006 letters from Boone's sisters to Judge Steele discussing Boone's mental limitation or vulnerability)).

Boone has, in fact, included evidence cited in the sentencing memorandum in his response to the undersigned's show cause order and in his reply—the psychological evaluation completed after Dr. Thomas Bennett, a clinical psychologist, examined Boone on November 25, 2005. (*See* Docs. 42 at 1-2, 6-9; 48 at 6-9.) Without recounting the details in Dr. Bennett's report, it is sufficient for present purposes to note that, in November 2005, if not sooner, Boone had been diagnosed as "Axis II: Personality Disorder not otherwise specified" (*id.* at 9),[7] which almost matches the BOP's June 2012 diagnosis: "Axis II: Borderline personality Disorder" (*id.* at 10). Thus, the undersigned cannot find § 2255(f)(4) to be applicable. *Cf. United States v. Hubbard*, Criminal No. 09–23 ADM/JJG, 2012

---

[7] Dr. Bennett also testified regarding Boone's psychological health at sentencing, explaining,

> Mr. Boone's psychological health at this point is very similar to what it's been for most of his life, which is that he has a long history of ineptitude and inadequacy, that he has a history of numerous strikes against him, so to speak, including his cerebral palsy, seizure disorder, numerous stress-linked physical problems, below average intellectual functioning, a history of depression, some family history perhaps with some psychological problems that related to other family members in the past; having moved numerous times as a child, having been in learning disabilities classes, having had early exposure to inappropriate sexual contact prior to adolescence, having had difficulty being consistently successful in jobs, having been found disabled by virtue of a combination of depression and physical problems, so that basically, Mr. Boone has struggled against numerous hurdles, physical and emotional, for much of his life.

(Doc. 32 at 7:3-18.)

5

WL 6652865, at *3 (D. Minn. Dec. 21, 2012) ("Only the fourth event could potentially create a viable statute of limitations period for Hubbard's motion. However, Hubbard admits that he was diagnosed with bipolar disorder and paranoid schizophrenia before he was sentenced on November 20, 2009. Neither Hubbard nor his attorney raised this diagnosis at the sentencing hearing, and over three years have since passed. As a result, § 2255(f) bars Hubbard from now raising a collateral attack against his sentence based on competence."); *United States v. Smith*, No. 3:05–cr–432, 2011 WL 5549095, at *3-4 (M.D. Pa. Nov. 15, 2011) *and United States v. Smith*, No. 3:05–cr–432, 2012 WL 1392318, at *4 (M.D. Pa. Apr. 23, 2012) (rejecting the applicability of § 2255(f)(4) to extend the filing period where the petitioner had a well-documented "substantial psychological history" from which "due diligence would have uncovered evidence of his impaired cognitive functioning").

Therefore, the timeliness of the petition must be calculated under § 2255(f)(1) based upon the date on which his conviction became final. Ordinarily, a criminal conviction will become final upon conclusion of direct review. *See, e.g., Jackson v. Secretary for Dep't of Corrections*, 292 F.3d 1347, 1348 (11th Cir. 2002). Here, Boone filed a direct appeal, and the Eleventh Circuit affirmed his sentence in part, but vacated Boone's 210-month sentence for possession (Doc. 33). The Court resentenced Boone pursuant to an order entered February 26, 2007, which Boone did not appeal (Doc. 34). Unlike a sentencing adjustment pursuant to § 3582, a *de novo* resentencing after Eleventh Circuit remand restarts the § 2255(f)(1) clock.

*See, e.g., Williams v. United States*, Nos. CV410–238, CR406–128, 2010 WL 4638906, at *1 & n.2 (S.D. Ga. Oct. 19, 2010), *report and recommendation adopted*, 2010 WL 4638901 (S.D. Ga. Nov. 4, 2010); *cf. Burton v. Stewart*, 549 U.S. 147, 156–57 (2007) (noting that "'[f]inal judgment in a criminal case means sentence. The sentence is the judgment.'" (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937))). Since Boone did not file an appeal after resentencing, under the then applicable rules, his conviction was final 10 days after it was imposed. *See, e.g., Williams*, 2010 WL 4638906, at *1 (citing *Adams v. United States*, 173 F.3d 1339, 1343 n.2 (11th Cir. 1999) ("If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence becomes final, and the statute of limitations begins to run, on the date on which the time for filing such an appeal expired.")). Consequently, he had until Monday, March 10, 2008 to timely file a collateral attack pursuant to § 2255(f)(1). Because Boone did not sign this motion until August 15, 2012 (*compare* Doc. 39 at 13, *with Fuller*, 381 Fed. App'x at 908), ***more than 1,600 days after the one-year limitation period expired,*** this Court cannot reach the merits of his claims unless he is entitled to equitable tolling.

**B.    Equitable tolling.**

Equitable tolling of the AEDPA's one-year limitations period is only "appropriate when a prisoner demonstrates both extraordinary circumstances that prevented him from timely filing his motion to vacate and due diligence." *Manders v. United States*, Nos. 6:10–cv–1329–Orl–31GJK; 6:05–cr–173–Orl–31GJK, 2012 WL 72737, at *4 (M.D. Fla. Jan. 10, 2012) (citations omitted); *accord Foley v. United*

*States*, 420 Fed. App'x 941, 942 (11th Cir. Apr. 1, 2011) (per curiam) ("[E]quitable tolling 'is available only if a [prisoner] establishes **both** extraordinary circumstances and due diligence.'" (quoting *Diaz v. Secretary of Dep't of Corr.*, 362 F.3d 698, 702 (11th Cir. 2004) (emphasis in *Diaz*))); *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549, 2562 (2010) ("[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." (citation and internal quotation marks omitted)). Specifically, "[i]n the § 2255 context, equitable tolling 'is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.' . . . 'The "extraordinary circumstances" standard applied in this circuit focuses on the circumstances surrounding the late filing of the habeas petition, rather than the circumstances surrounding the underlying conviction.' . . . The **petitioner has the burden** of proving entitlement to equitable tolling by showing that 'extraordinary circumstances that were both beyond his control and unavoidable even with diligence' prevented filing the petition on time." *Jones v. United States*, 304 F.3d 1035, 1039-40 (11th Cir. 2002) (emphasis in original), *cert. denied*, 538 U.S. 947 (2003); *see also Johnson v. United States*, 340 F.3d 1219, 1226 (11th Cir. 2003) ("We have held that equitable tolling is appropriate when a prisoner's § 2255 petition is untimely because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence. . . . We have emphasized, however, that equitable tolling applies only in truly extraordinary circumstances. . . . Appellant

bears the burden of establishing that he is entitled to this extraordinary relief."), *aff'd*, 544 U.S. 295 (2005); *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008) (noting that the Eleventh Circuit "has held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." (citation omitted)); *Diaz*, 362 F.3d at 700-01 ("Equitable tolling is to be applied when '"extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.' . . . Thus, the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling."); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) ("Section 2244 is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'"); *cf. Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) ("We [ ] conclude that in the proper case § 2255's period of limitations may be equitably tolled. This is not, however, a proper case. Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." (citations omitted)).

Here, Boone asserts that his November 2005 evaluation "supports a factual showing that he is mentally incompetent and completely unable to understand the nature or object of post-conviction relief in a rational manner." (Doc. 42 at 3.) He thus alleges that his "mental impairment has affected [his] ability to file a timely habeas petition." (*Id.*; *see also id.* ("The Petitioner's mental retardation prevented

him from timely filing his federal habeas petition. The petition was filed with the help of another inmate. Petitioner's June 26, 2012 evaluation suggests that the Petitioner still suffers from mental retardation. Petitioner has suffered from the time of his direct appeal and resentencing up to the present, and he is not able to understand and comply with the AEDPA's filing requirements and deadlines. Petitioner's mental impairments existed during the limitations period and prevented him from filing.").)

In this Circuit, significant mental health impairments may indeed be considered extraordinary circumstances in a proper case.

> In *Hunter v. Ferrell*, 587 F.3d 1304 (11th Cir. 2009), the Eleventh Circuit held that a person with a **substantial** mental illness, such as mental retardation, may be granted equitable tolling of the one-year period for filing a federal habeas petition. In order to avail oneself of equitable tolling, ***a prisoner must present <u>sufficient evidence to create a factual issue as to whether there is a casual connection between the prisoner's mental incapacity and his ability to timely file a habeas petition</u>***. *Id.* at 1308; *see also Mendez v. United States*, Nos. 2:10–cv–198–FTM–29DNF; 2:06–cr–82–FTM–29DNF, 2011 WL 5555876, at *6-7 (M.D. Fla. Oct. 27, 2011).

*Manders*, 2012 WL 72737, at *4 (emphasis added and citation modified).

In *Mendez*, the court discussed *Hunter*'s causal connection requirement in light of the Eleventh Circuit's earlier decision in *Lawrence v. Florida*, 421 F.3d 1221 (11th Cir. 2005), *aff'd* 549 U.S. 327 (2007). *See* 2011 WL 5555876, at *6-7. In *Lawrence*, the petitioner "contend[ed] that his mental incapacity prevented him from timely filing and justifie[d] the invocation of equitable tolling." 421 F.3d at 1226. The Eleventh Circuit found, however, that Lawrence could not "establish a causal connection between his alleged mental incapacity and his ability to file a

10

timely petition." *Id.*

> Lawrence admits in his appellate brief that medical reports state that his full scale IQ is 81, and he admits that he did not make the assertion that he was mentally incompetent per se. Instead, Lawrence claims that his initial pleading made it clear that he has suffered from mental impairments his entire life. However, this contention, without more, is insufficient to justify equitable tolling.

*Id.* at 1226-27 (collecting authority)[8]; *see also Cutts v. Jones*, Civil Action No. 1:06cv256-MHT, 2009 WL 230091, at *7 (M.D. Ala. Jan. 30, 2009).[9] In *Mendez*,

---

[8] In affirming the Eleventh Circuit's decision, Justice Thomas, writing for the Supreme Court's five-member majority, quickly dispatched Lawrence's equitable tolling-mental incapacity argument: "Fourth, Lawrence argues that his mental incapacity justifies his reliance upon counsel and entitles him to equitable tolling. Even assuming this argument could be legally credited, Lawrence has made no factual showing of mental incapacity. In sum, Lawrence has fallen far short of showing 'extraordinary circumstances' necessary to support equitable tolling." 549 U.S. at 337.

[9] In *Cutts*, Magistrate Judge Moorer's recommendation, adopted by Judge Thompson, provides the following lengthy string cite, which illustrates the importance of establishing a causal connection between the alleged mental impairment and the ability to timely pursue a collateral attack:

> Cutts' reference to his mental impairment as an implicit basis for equitable tolling entitles Cutts to no relief as he has failed to establish a causal connection between the alleged mental impairment and his ability to file a timely federal habeas petition. *Lawrence v. Florida*, 421 F.3d 1221, 1226 (11th Cir. 2005); *Bilbrey v. Douglas*, 124 Fed. App'x 971, 973 (6th Cir. 2005) (equitable tolling not applicable because petitioner "failed to establish a causal connection between her mental condition and her ability to file a timely petition"); *Green v. Hinsley*, 116 Fed. App'x 749, 751 (7th Cir. 2004) (equitable tolling did not apply because petitioner failed to submit evidence of how his low IQ would render him incompetent or prevent him from timely filing his petition); *Fisher v. Gibson*, 262 F.3d 1135, 1145 (10th Cir. 2001) (petitioner's mere allegations of incompetency at the time of his guilty pleas did not suffice to warrant equitable tolling of the limitations period); *Lake v. Arnold*, 232 F.3d 360, 371 (3rd Cir. 2000) (mental deficiency, including even mental incompetence, standing alone, not sufficient reason to toll limitations period); *see also Smith v. Newsome*, 876 F.2d 1461, 1466 (11th Cir. 1989) (where petitioner understood nature and consequences of state proceedings and acted throughout in a rational manner, "general mental condition" does not excuse failure to act in accordance with applicable procedural rules); *Farabee v. Johnson*, 129 Fed. App'x 799, 804 (4th Cir. 2005) (petitioner

similarly, neither the petitioner's PSI nor his medical records, "which indicate[d] that he may have suffered from mental impairments his entire life," were "sufficient to justify equitable tolling." *See* 2011 WL 5555876, at *6. In contrast to *Hunter*, where "the court found that the doctor's report 'strongly suggests that Hunter's well-documented, *irreversible mental retardation* is severe enough that Hunter, by himself, is not able to understand and comply with the AEDPA's filing requirements and deadlines[,]'" *id.* at *7 (quoting 587 F.3d at 1309 (emphasis added)), Mendez, *like Boone*, had "not been diagnosed as mentally retarded[,]" *id.*[10]

---

> presented no evidence demonstrating "his mental illness interfered with his ability to appreciate his litigation position or to make rational decisions concerning the litigation" and, therefore, failed to establish that mental illness caused his several procedural defaults); *Harris v. McAdory*, 334 F.3d 665, 669-70 (7th Cir. 2003) (neither borderline mental retardation nor frontal lobe brain dysfunction sufficient to warrant relief from a procedural bar); *Ervin v. Delo*, 194 F.3d 908, 916 (8th Cir. 1999) (petitioner's "alleged depression could not amount to cause excusing [petitioner's] procedural default" where the "alleged depression did not hinder his ability to file a pro se postconviction motion."); *Holt v. Bowersox*, 191 F.3d 970, 974 (8th Cir. 1999) (absent "conclusive showing that mental illness interfered with a petitioner's ability to appreciate his . . . position and make rational decisions regarding his . . . case at the time during which he . . . should have pursued post-conviction relief[,]" mental illness does not excuse procedural default); *Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992) (petitioner's below-average intelligence insufficient to justify relief from a procedural bar); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's diagnosis as a "borderline mental defective" fails to establish cause for excusing a procedural default). A petitioner must make a threshold showing of mental incompetence, *see Calderon v. United States District Court for the Central District of California*, 163 F.3d 530, 541 (9th Cir. 1998) (en banc), and demonstrate that the alleged incompetence affected his ability to file a timely habeas petition. *Miller v. New Jersey State Department of Corrections*, 145 F.3d 616, 618 (3rd Cir. 1998). Thus, the mere fact that Cutts may have suffered from some mental deficiency, without more, is insufficient to justify equitable tolling. *Lawrence*, 421 F.3d at 1227.

*Id.*

[10]     But unlike Boone, Mendez "was a [documented] malingerer, in that he has

The only intelligence testing Boone provides the Court, from Dr. Bennett's November 2005 evaluation, confirms this. Boone's intellectual testing may indicate that he is below average, but his scores, unlike Hunter's, do not approach scores indicative of mental retardation.

> Intelligence testing yielded a Full Scale IQ score of 80, at the lower end of the Low Average range of cognitive ability relative to other people his age. This indicates below average learning efficiency and general problem solving skills. His Verbal IQ score of 86 was in the Low Average range, while his Performance IQ score of 77 was in the Borderline range. He demonstrated average ability in tasks requiring abstract verbal concept formation skills and general fund of knowledge of his environment. He demonstrated slightly below average ability in tasks requiring attention to visual detail, analysis and reproduction of abstract visual stimuli, verbal application of learned information to practical life situations, attention to and immediate recall of auditory stimuli, and mental computational skills. He demonstrated well below average ability in a clerical copying task requiring new visual learning and sustained concentration, as well as in tasks requiring analysis of complex visual patterns, understanding of the logical sequences of social events when there were no verbal clues, and expressive vocabulary. In general, both his verbal skills and his visual motor skills are below average.

(Doc. 42 at 7-8.) At sentencing, Dr. Bennett's testimony was consistent with this report. He testified that Boone's "psychological health [then was] very similar to what it's been for most of his life." (Doc. 32 at 7:3-18.) He further testified that Boone had "below average intellectual functioning" or even just "slightly below average intellect" and also agreed that Boone has "a very low borderline intellect." (*Id.* at 7:8-9, 10:25, 15:15-16.) Boone has not, moreover, presented more recent evidence to show that he is more mentally disabled now than he was at sentencing

---

the feature of intentionally misrepresenting or exaggerating his symptoms for gains such as receiving diminished legal ramifications." *Id.* (internal quotation marks and record citation omitted).

in March 2006. (*See* Doc. 42 at 22-34 (purported to be Boone's BOP medical records, from April 2010 through June 2012; as to Boone's mental health these records show that he was assessed as having generalized anxiety disorder and depressive disorder).

Thus, it is clear that Boone has not been diagnosed as mentally retarded. Nor has Boone provided sufficient evidence to show that a significant mental disability was what prevented him from filing a timely habeas petition. *Contra Hunter*, 587 F.3d at 1308-10 (in which it was stated that the petitioner had a Full Scale IQ score of 59, "at the low-end of the mildly retarded range"; that the petitioner's "mental retardation moderately to severely impair[ed] his judgment, insight and problem-solving skills, which [made] him unable to function independently"; that "he [was] illiterate"; and that "he suffer[ed] from severe expressive speech aphasia which [made] it difficult for him to communicate intelligibly")[11]; *see, e.g., Murray v. McNeil*, No. 07-22376-CIV, 2008 WL 2520494, at *2 (S.D. Fla. June 20, 2008) ("Although Petitioner claims that the mental health reports contained in the record demonstrate that he is mentally retarded, the reports indicate otherwise. There are two psychological evaluations in the record, one by Dr. Hilda M. Lopez and one by Drs. Hyman H. Eisenstein and Esther L. Selevan. Dr. Lopez writes in her report that none of the psychological tests conducted on Petitioner during his developmental years yield scores which classify

---

[11] Thus, in addition to IQ scores indicative of mental retardation, Hunter possessed concomitant functional skills. The evidence as to Boone's ability to function is consistent with his higher intellectual testing scores.

14

him as mentally retarded, but rather as learning disabled. Petitioner has scores that put him within the borderline range of intellectual functioning. Similarly, Drs. Eisenstein and Selevan reported that Petitioner's IQ is within the borderline range of intellectual functioning. While Drs. Eisenstein and Selevan reported that Petitioner met the criteria for 'diminished capacity due to his long standing cognitive, emotional, and substantive abuse problems,' in order to equitably toll the limitations period, Petitioner must 'establish a causal connection between his alleged mental incapacity and his ability to file a timely petition.' *Lawrence*, 421 F.3d at 1226. Petitioner was able to timely pursue his state court appeals despite his claimed mental incapacitation. Thus, even assuming that Petitioner is mentally incapacitated, he is unable to establish the necessary causal connection to justify equitable tolling." (record citations omitted and citation modified)); *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004) ("As a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity. *See, e.g., Grant v. McDonnell Douglas Corp.*, 163 F.3d 1136, 1138 (9th Cir. 1998) (finding equitable tolling based on mental condition to be appropriate "only in exceptional circumstances, such as institutionalization or adjudged mental incompetence"). Sosa has not asserted that his mental condition rises to this level, and in any event, his diligence in seeking to vacate or modify his sentence indicates quite clearly that his is not an extraordinary case.").

As such, Boone has not demonstrated extraordinary circumstances entitle him to equitable tolling.

15

C. **"Motion to Amend."**

Boone has filed a "memorandum brief in support of amendment" to the § 2255 petition (Doc. 46), which he contends "is timely filed under § 2255(f)(1)" and Rule 15(a) (*see* Doc. 46 at 1). The Court may, of course, consider issues raised in a memorandum of law that "relate back to [an] original, ***timely*** § 2255 Motion[,]" *United States v. Westry*, Civil Action No. 07-0425-WS; Criminal No. 05-0206-WS, 2007 WL 2051264, at *2 (S.D. Ala. July 16, 2007) (denying the Government's motion to strike untimely filed memorandum of law; relying on amended § 2255 petition "relation back" principles as provided in *Davenport v. United States*, 217 F.3d 1341 (11th Cir. 2000), and its progeny, and in *Mayle v. Felix*, 545 U.S. 644, 650 (2005)) (emphasis added).[12] But the Court need not consider Boone's motion to amend because, simply, his original petition is untimely and he is not entitled to equitable tolling of the applicable statute of limitations.

D. **Certificate of Appealability.**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 18 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas

---

[12] Pursuant to Rule 15, an amended § 2255 petition is not time barred if the "claims filed or added [in the amendment] 'relate back' to timely-filed claims." *United States v. Sanders*, Civil Action No. 04-0042-CB; Criminal No. 98-00056-CB, 2007 WL 4285398, at *5 (S.D. Ala. Dec. 4, 2007) (citing *Davenport*); *see also United States v. Hames*, 431 Fed. App'x (11th Cir. 2011) (per curiam) ("Rule 15 can be used in cases where a defendant files a timely § 2255 motion and then later files an amendment or additional motion that relates back to the original § 2255, but would otherwise be untimely.").

16

corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may only issue where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).

Boone is not entitled to a certificate of appealability. When, as is the case here, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as it is clear that any claim for relief made pursuant to § 2255 is time-barred, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that the petitioner should be allowed to proceed further. *See Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or

17

that the petitioner should be allowed to proceed further.").

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation, the objecting party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g.*, *Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report and recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011)[13]; *Griffin v. DeRosa*, No. 3:10cv342/RV/MD, 2010 WL 3943702, at *4 (N.D. Fla. Sep. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth*, 2010 W: 3943699 (N.D. Oct. 5, 2010).

### III. <u>Motion to Compel</u>

Boone has also filed a motion requesting that the Court compel the United States file a Rule 35(b) motion to reduce his sentence. It is recommended that this motion be **DENIED** because Boone has "not allege[d] that a substantial assistance motion was withheld on constitutionally impermissible grounds." *United States v. Hutchins*, Nos. 3:08cr39/MCR/CJK; 3:09cv566/MCR/CJK, 2012 WL 4336014, at *9 (N.D. Fla. Aug. 21, 2012) ("Contrary to Hutchins's assertion, federal courts do not have authority to review a prosecutor's decision to withhold a substantial assistance motion, unless such motion was withheld on unconstitutional grounds." (citations

---

[13] It should be noted that in that proceeding, the Eleventh Circuit (Judge Hull) also denied the petitioner's motion for certificate of appealability on October 11, 2011. (*See* Doc. 14 in CA-11-0165-WS-C.)

18

omitted)), *report & recommendation adopted*, 2012 WL 4336025 (N.D. Fla. Sept. 20, 2012); *accord United States v. Jardines*, 517 Fed. App'x 828, 830 (11th Cir. Apr. 23, 2013) (per curiam) ("In the absence of a promise to do so, the government has the authority—but not the duty—to file a motion to reduce a sentence when a defendant has provided substantial assistance to the government. The district court can review the government's refusal to file a Rule 35(b) motion but may grant relief only upon finding the government's refusal was based on an unconstitutional motive. 'It follows that a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing. Nor would additional but generalized allegations of improper motive.'" (citing and quoting *Wade v. United States*, 504 U.S. at 181, 185-86)).

## IV.   Conclusion

Accordingly, the Magistrate Judge **RECOMMENDS** that this matter be **DISMISSED** as time-barred and **FURTHER RECOMMENDS** that (1) the Court find that Boone is not entitled to a certificate of appealability, and is therefore not entitled to appeal *in forma pauperis*, and (2) **DENY** his motion (Doc. 47) to compel the United States to file a substantial assistance motion pursuant to Rule 35(b).

## V.   Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an

19

objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 24th day of September, 2013.

/s/ *Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**